# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

COLLECTABLE PROMOTIONAL        )
  PRODUCTS, INC., an Oklahoma     )
corporation,                           )
                                   )
              Plaintiff,          )
                                   )
      vs.                      )    NO. CIV-06-1187-D
                                   )
                                   )
                                   )
DISNEY ENTERPRISES, INC., a Delaware   )
  corporation, and MATTEL, INC., a     )
Delaware corporation,              )
                                   )
          Defendants.       )

## <u>ORDER</u>

Before the Court is the Defendants' Motion for Summary Judgment [Doc. No. 52]. Defendants Disney Enterprises, Inc. ("Disney") and Mattel, Inc. ("Mattel") argue that the undisputed material facts in the record establish that they are entitled to judgment as a matter of law on the trademark infringement and unfair competition claims asserted by Plaintiff Collectable Promotional Products, Inc. ("CPP"). CPP timely responded to the Motion, and Defendants filed a reply brief.[1]

CPP alleges that Defendants have infringed a federally registered trademark in violation of Section 32(1)(a) of the Lanham Act,  15 U. S. C. § 1114(1)(a) (" § 32(1)(a)").   In the alternative,

---

[1]*Defendants' reply brief is accompanied by several exhibits.  Among these is a 29-page exhibit entitled "The Absence of Dispute of Fact," and it consists of a chart comparing Defendants' statement of undisputed facts with CPP's response.  Defendants' Ex. 61.  However, that exhibit goes well beyond a comparison of factual statements, and contains extensive argument.  As a result, the exhibit effectively extends the text of Defendants' reply brief to more than 40 pages, which exceeds both the 10-page reply brief limit in the Local Civil Rules and the 30-page limit for summary judgment briefs.  See LCvR 7.1(e) and (i). The Court regards the inclusion of this exhibit as an inappropriate means of avoiding the page limit for reply briefs; as a result, Defendants' exhibit has not been considered.*

CPP contends that Defendants infringed an unregistered trademark or engaged in false advertising or unfair competition in violation of Section 43(a) of the Lanham Act, 15 U. S. C. § 1125(a) ("§ 43(a)").   CPP alleges that, in 1998, it obtained a federal trademark registration for "Real Cars" and a logo including that phrase superimposed over a chevron design.   Its trademark registration described the goods covered as miniature automobile toys.   CPP contends that Defendants have infringed its registered trademark by producing, marketing and distributing toy cars bearing Defendants' 2006 trademark obtained in connection with the manufacture and distribution of items, including miniature automobile toys, related to the Disney motion picture "Cars."

In their summary judgment  motion, Defendants argue that CPP cannot, as a matter of law, establish the essential elements of its claims.   Defendants first contend that CPP's trademark registration was void *ab initio* because the mark was not in use prior to the date of CPP's registration application.   Second, Defendants contend that, even if CPP's trademark was valid, it had been abandoned  prior to Defendants' 2006 registration of its own mark.   Defendants further argue that, in any event, there is no evidence of actual confusion or a likelihood of confusion by consumers regarding the origin of the parties' respective products.

I. Summary judgment standard:

Summary judgment is proper where the undisputed material facts establish that a party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A material fact is one which may affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).   To dispute a material fact, Plaintiff must offer more than a "mere scintilla" of evidence; the evidence must be such that "a reasonable jury could return a verdict" for Plaintiff.   *Id.*   The facts and reasonable inferences

therefrom must be viewed in the light most favorable to Plaintiff. *MacKenzie v. City & County of Denver*, 414 F.3d 1266, 1273 (10th Cir. 2005).

If the undisputed facts establish that Plaintiff cannot prove an essential element of a cause of action, Defendants are entitled to judgment on that cause of action. *Celotex*, 477 U.S. at 322. However, Defendant need not disprove Plaintiff's claim, but need only point to a lack of evidence on an essential element of the claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F. 3d 664, 671 (10th Cir. 1998). The burden then shifts to Plaintiff to go beyond the pleadings and present facts, admissible in evidence, from which a rational trier of fact could find in its favor; conclusory arguments are insufficient, as the facts must be supported by affidavits, deposition transcripts, or specific exhibits incorporated therein. *Id.* at 671-72.

## II. Application:

The record before the Court reflects that CPP is a home-based business incorporated in Oklahoma in 1994. Its incorporator, Lea Knight, is a collector of miniature die-cast toy automobiles, primarily the Hot Wheels toy cars manufactured by Mattel. Shortly after CPP's incorporation, Knight developed a concept for a limited edition of Hot Wheels cars which would depict actual cars driven by well-known race car drivers; the replicas would be manufactured by Mattel as part of its Hot Wheels series, and would be sold to Hot Wheels distributors and collectors. Knight also planned to donate a portion of the sales proceeds to a charity.

It is not disputed that, in 1995 and 1996, CPP obtained licensing agreements with two drivers, Carroll Shelby ("Shelby") and "Big Daddy" Don Garlits ("Garlits") to depict, respectively, Shelby's 1965 Cobra 427 S/C and Garlits' custom Dodge Ram truck. According to Knight's plan, Mattel would be asked to manufacture replicas of the Shelby and Garlits vehicles, and they would

3

be marketed as limited edition Hot Wheels toys.   In exchange for the right to use the drivers' names and depict their vehicles, CPP agreed to donate, to a charity selected by the driver, some of the proceeds from the sales of the replica depicting that driver's vehicle.   CPP also entered into an agreement with Mattel to manufacture 10,000 units each of a die-cast toy replicating the two drivers' actual cars.[2]  In 1995 and 1996, Mattel manufactured 10,000 units each of the Shelby and Garlits vehicles.[3]   Each toy was packaged as a limited edition toy under Mattel's Hot Wheels logo; the package also depicted the photograph and signature of the driver, along with CPP's "Real Cars" logo.  A photograph of the Shelby Hot Wheels limited edition toy, in its package, is submitted as Defendants' Ex. 8, and a photograph of the Garlits Hot Wheels limited edition toy, in its package, is submitted as Defendants' Ex. 15.  These were the only toy vehicles manufactured by Mattel and packaged with the "Real Cars" logo.   Although Mattel and CPP subsequently entered into other agreements whereby Mattel manufactured other limited-edition toy vehicles which were sold by CPP to raise money for an Oklahoma City-based charity, these products did not display CPP's "Real Cars" logo.[4]   No other toy vehicles bearing the "Real Cars" logo have been manufactured.

The record reflects that  the Shelby and Garlits Hot Wheels "Real Cars" vehicles  were advertised by CPP in publications directed at Hot Wheels collectors.  Defendants' Ex. 27.  In the

---

[2]*The record reflects that Mattel and CPP executed a 1995 agreement regarding the Shelby Cobra. Defendants' Exs. 6 and 9.  Their agreement regarding the Garlits vehicle was reached on or about January 4, 1996. Defendants' Ex. 14.*

[3]*It is undisputed that the Shelby vehicles were shipped by Mattel to CPP in May and June of 1995.  Knight dep., Defendants' Ex. 1, pp. 49-51; May 16, 1995 letter from Mattel to CPP, Defendants' Ex. 9.  The Garlits toys were manufactured and sold to CPP in July 1996.*

[4]*According to an agreement with CPP, in 1995 Mattel manufactured and distributed a toy vehicle called "The Helpful Hauler," and a portion of the proceeds benefitted the Oklahoma City-based charity "Feed the Children." Defendants' Ex. 11; in 1998, Mattel manufactured additional vehicles pursuant to an agreement with CPP.  Defendants' Exs. 20 and 21.  None of these vehicles displayed the "Real Cars" logo.*

4

August 1995 edition of "Die Cast Digest," CPP advertised the Shelby Cobra Hot Wheels toy vehicle, and solicited orders. Defendants' Ex. 27, p. 2. CPP also sold the Shelby and Gartlis "Real Cars" toy vehicles at Hot Wheels collectors conventions and swap meets. The evidence also shows that Mattel sold some of the vehicles to its distributors or placed them for sale in Mattel stores.

CPP's "Real Cars" logo was developed in 1994 for use in connection with Knight's plan to develop and market toy replicas of actual vehicles driven by well-known drivers. At Knight's request, the logo was designed by David Brisco, a graphic artist and Hot Wheels collector. He developed a logo using the words "Real Cars" in block print superimposed over a chevron design, which Brisco described as a "flying V" similar to designs appearing on 1950's and 1960's vehicles. Copies of his designs for the logo and packaging are submitted as Defendants' Ex. 34.

CPP submitted its trademark application on November 18, 1994, seeking registration of the Real Cars logo designed by Brisco as a trademark; the application described the goods on which the trademark would appear as "miniature automobile toys (Class 28)." CPP Trademark application, Defendants' Ex. 36, p. 1. The application stated that the first date on which the mark was used in interstate commerce was September 15, 1994; it stated that the first use of its mark anywhere was March 4, 1994. *Id.* The United States Patent and Trademark Office ("PTO") initially refused registration, finding that the proposed mark was too similar to an existing trademark. Defendants' Ex. 37. On June 15, 1995, CPP requested reconsideration, stating that the prior mark had been cancelled. Defendants' Ex. 38. The PTO ultimately issued the requested registration for the mark, "Real Cars and design," in February 1998. Defendants' Exs. 39 - 41.

On or about May 10, 2004, CPP submitted to the PTO a "Combined Declaration of Use and Incontestability Under Sections 8 & 15." Plaintiff's Ex. 2A. In the declaration, CPP represented

to the PTO that its registered trademark "has been in continuous use in commerce for five consecutive years after the date of registration, or the date of publication under Section 12(c), and is still in use in commerce on or in connection with all goods and/or services as identified above." Plaintiff's Ex. 2A at p. 3.  On or about June 12, 2004, the PTO issued its Notice of Acceptance of that declaration.  Plaintiff's Ex. 2B.

In 2001, Pixar Animation Studios ("Pixar") began plans for an animated motion picture depicting a fantasy world populated by cars; ultimately, an agreement was reached with Disney to produce the motion picture with the title "Cars."  A logo was developed by Pixar for use in connection with the motion picture.  Prior to finalizing the title of the motion picture and the logo, counsel for Disney requested and obtained a trademark search to determine if the title, "Cars," would infringe any existing trademarks.  The 2002 search did not reveal CPP's trademark.  Defendants' Exs. 42 and 43.   Additional legal opinions were obtained after a supplemental search in 2004.  Defendants' Exs. 43, 48.  An opinion letter was presented to Disney stating that the proposed use of the "Cars" title for the motion picture and for collateral merchandise and services, including toys, was available for use and for registration.  Defendants' Exs. 49 and 50.

Pixar also obtained an opinion from its outside counsel regarding the potential use and registration of the logo.   The search did not reveal the CPP trademark.  Defendants' Ex. 51.  Pixar furnished the legal opinion to Disney.  Defendants' Ex. 52.

On December 28, 2004, Disney submitted to the PTO a trademark registration application for the "Cars" word and design mark.  Defendants' Ex. 53.  The accompanying design includes the word "cars," in script letters placed above a chevron design; the application describes the goods and services on which the mark would appear as "card games; electric action toys; inflatable toys;

6

manipulative games; plush toys; stuffed toys; toy vehicles; toy cars; toy trucks." Defendants' Ex. 55. On November 28, 2006, Disney's "Cars" trademark was registered by the PTO. *Id.*

In 2004, Disney entered into a licensing agreement with Mattel for the manufacture and distribution of a wide range of products related to Disney movies, including but not limited to the anticipated motion picture, "Cars." Defendants' Exs. 56, 57. In February 2006, Mattel manufactured products, including small-scale die cast and plastic toy automobiles replicating the characters in the motion picture, displaying the "Cars" logo. These products, along with others bearing the "Cars" mark, were widely advertised and marketed by Disney to a mass retail market, pursuant to Disney's standard licensing agreement limiting sales to authorized outlets. Defendants' Ex. 56.

According to the sales records submitted by CPP, the last sales of the Shelby and Cobra "Real Cars" toy vehicles occurred in 1999. Defendants' Ex. 28. CPP's sales tax records reflect sales of its "limited edition" products from 1994 through 1997. Defendants' Ex. 29. CPP's Oklahoma Sales Tax Reports from March 1994 through June 2006 reflect gradually declining sales after 1999, with $631 in sales reported during the last six months of 2002. Defendants' Ex. 31; Knight dep., Defendants' Ex. 1, p. 63-64. There were no reported sales by CPP of any products in calendar years 2003 through 2006. Defendants' Ex. 31. The record reflects that CPP has not filed a tax return since 2002. Knight dep., Defendants' Ex. 1, p. 79.

In 2002, Knight began selling the Mattel-manufactured toy vehicles, including those bearing the "Real Cars" logo, on eBay. *Id.* at p. 64. At that time, the sales were not made via an internet site maintained by CPP; instead, Knight conducted these personally under the eBay-subscribed name "mymom65." Knight dep., Defendants Ex 1, p. 65. This listing did not refer to CPP. *Id.* at p. 68.

A. The § 32 infringement claim:

Pursuant to § 32 of the Lanham Act, 15 U. S. C. § 1114(1)(a), the unauthorized use of "any reproduction, counterfeit, copy, or colorable imitation" of a registered trademark constitutes trademark infringement if it is used in a manner that "is likely to cause confusion" in the marketplace concerning the source of different products. *King of the Mountain Sports, Inc. v. Chrysler Corp.,* 185 F. 3d 1084, 1089 (10th Cir. 1999); *First Savings Bank, F. S. B. v. First Bank System, Inc.*, 101 F. 3d 645, 651 (10th Cir. 1996). To establish a claim under § 32, a plaintiff must prove 1) its mark is valid and legally protectable; 2) the mark is owned by the plaintiff; and 3) the defendant's use of the mark is likely to cause confusion concerning the origin of the goods or services.

Defendants argue that CPP cannot establish these essential elements of its  § 32 claim because 1) CPP has no protectable interest in its logo as a trademark  because the mark was not in use prior to CPP's registration application; 2) even if it had been in use at that time, the subsequent non-use of the logo for several years prior to Defendants' registration constitutes abandonment of the mark; and 3) even if CPP has a protectable interest in its mark under the Lanham Act, there is no likelihood of confusion between CPP's logo and Defendants' trademark.

1. Protectable interest in the CPP mark:

Defendants argue that CPP cannot establish that it has a protectable interest in its mark because its registration application contained inaccurate information which renders the registration void *ab initio*. Alternatively, Defendants contend that, even if the mark was properly registered, CPP no longer has a protectable interest because it has abandoned its mark.

a.  Void *ab initio*:

Defendants argue that CPP's 1994 trademark application was void *ab initio* because it stated that the mark had been used in commerce prior to the date of the application when, in fact, there was no prior use in commerce.  Defendants contend that the evidence shows that CPP's mark was not used in commerce until several months after the submission of its trademark application.

As Defendants argue, a federal trademark application requires that the mark has been "used in commerce" prior to the date on which the application was filed.  *Grand Canyon West Ranch, LLC v. Hualapai Tribe* 78 U.S.P.Q.2d 1696, 1698 ( T.T.A.B.2006) ("It is clear that an applicant cannot obtain a registration under Section 1 of the Trademark Act for goods or services upon which it has not used the mark.").  By statute, the application for a registered trademark must be accompanied by the applicant's verified declaration which must include, *inter alia*, the date of the applicant's first use of the mark in interstate commerce, a description of the goods in connection with which the mark is used, and a drawing of the mark."  15 U. S. C. § 1015(a)(2).[5]

To be used in commerce or on goods, the mark must be "placed in any manner on the goods or containers or the displays associated therewith or on the tags or labels affixed thereto."  15 U. S. C. § 1127.  Alternatively, a mark may be used in commerce if "the nature of the goods makes such placement impracticable."  *Id.*  In that case, the mark must be placed on "documents associated with the goods or their sale."  15 U. S. C. § 1127.  In either case, the goods must also have been "sold or transported in commerce."  *Id.*

As Defendants point out, CPP stated in its September 20, 1994 trademark application that

---

[5]*As Defendants point out, a trademark application may also be based on the applicant's bona fide intent to use a mark which has not previously been used in commerce. 15 U.S.C. § 1051(b). To apply on this basis, however, the applicant must state that the mark has not previously been used, but that the applicant has a bona fide intent to use it in commerce. Id. It is undisputed that CPP did not rely on this provision of the statute when submitting its trademark application.*

the date of first use of its "Real Cars" logo was September 15, 1994. *See* declaration of Knight accompanying CPP trademark application, submitted as Defendants' Ex. 36. However, as Defendants also point out, the evidence shows that Mattel did not deliver to CPP the toy cars displaying the "Real Cars" logo until May of 1995. Lea Knight dep., Defendants' Ex. 1, p. 50. CPP advertised the two cars and solicited orders in collector publications in April of 1995. There is no evidence of any use of CPP's "Real Cars" logo until, at the earliest, April of 1995. Defendants argue that, as a result, the trademark issued to CPP was void *ab initio*. *See Gay Toys, Inc. v. McDonald's Corp.*, 585 F.2d 1067, 1069 (Fed. Cir. 1978).

The registration of a mark that does not meet the use requirement is void *ab initio*. *Aycock Engineering, Inc. v. Airflite,, Inc.,* 560 F. 3d 1350, 1357 (Fed. Cir. 2009) (citing *Gay Toys,* 585 F.2d at 1068). However, an incorrect date of first use is "not a material representation that serves as grounds for cancellation so long as the first use preceded the application date." *Miyano Machinery USA, Inc. v. MiyanoHitec Machinery, Inc.,*576 F. Supp. 2d 868, 880 (N.D. Ill. 2008) (citing *Pony Express Courier Corp. v. Pony Express Delivery Serv.,* 872 F.2d 317, 319 (9th Cir.1989) and

6 J. Thomas McCarthy, <u>Trademarks & Unfair Competition</u> § 31:74 (4th ed.2008) (the Trademark Board has consistently held that a misstatement of the date of first use is not fraudulent so long as there has been valid use of the mark prior to the filing date)); *General Mills, Inc. v. Nature's Way Products, Inc.*, 202 U. S. P. Q. 2d 840 (T. T. A. B. 1979).

In this case, Defendants argue that CPP cannot rely on this exception because the undisputed facts establish that there was no use of its mark prior to the application. Defendants are correct, as the evidence shows that there was no use of the "Real Cars" mark in commerce until CPP received

the initial shipment of the Shelby vehicles from Mattel in May or June of 1995; the Garlits vehicles were not shipped to CPP until sometime in 1996.

In response, Knight argues that he did not obtain the assistance of an attorney when filing the trademark application for CPP and that he did not understand the legal meaning of the term "use;"

instead, he considered its ordinary meaning.  Affidavit of Knight, CPP Ex. 2, ¶ 2.  According to Knight, he had placed the logo on CPP's stationery, business cards, and other printed materials, and he believed that such placement constituted  "use" for  purposes of the trademark application requirements. *Id.*   He does not dispute that the first "use" of the "Real Cars" logo, within the meaning of 15 U. S. C. § 1127, occurred after May of 1995.

CPP also argues that,  because its registration was in effect for a period of five years without a challenge to its validity on this or any other basis, its mark became "incontestable" and can only be challenged on specific grounds set forth in 15 U. S. C. § 1115(b).  Furthermore, CPP argues, its May 2004 declaration of continuous use, accepted by the PTO, states that CPP continuously used the mark in commerce for the previous five consecutive years; CPP contends that this declaration also establishes the incontestability of its mark.

Pursuant to the Lanham Act, where the trademark registrant uses its registered mark in commerce continuously for five consecutive years following the date of registration, the registrant's right becomes  "incontestable." *See* 15 U. S. C. § 1065.  Such registration is also "conclusive evidence" of the validity of the registered mark, the registration of the mark, and the registrant's exclusive right to use the registered mark in commerce.  15 U. S. C. § 1115(b).   Thus, an

11

incontestable mark satisfies the initial element of a plaintiff's burden of proof in a trademark

infringement action, as it establishes a valid and legally protectable mark.

As Defendants argue, however, "incontestability" does not preclude Defendants from

challenging CPP's claim of a valid and legally protectable mark on the bases set forth in § 1115(b).

Section 1115(b) sets out the "defenses or defects" to a claim that registration constitutes conclusive

evidence of the exclusive right to use the mark.  The statute expressly provides that the following

"defenses or defects" may be asserted:

> (1) That the registration or the incontestable right to use the mark was obtained
> fraudulently; or
>
> (2) That the mark has been abandoned by the registrant; or
>
> (3) That the registered mark is being used, by or with the permission of the registrant
> or a person in privity with the registrant, so as to misrepresent the source of the
> goods or services in connection with which the mark is used; or
>
> (4) That the use of the name, term, or device charged to be an infringement is a use,
> otherwise than as a trade or service mark, of the party's individual name in his own
> business, or of the individual name of anyone in privity with such party, or of a term
> or device which is descriptive of and used fairly and in good faith only to describe
> to users the goods or services of such party, or their geographic origin; or
>
> (5) That the mark whose use by a party is charged as an infringement was adopted
> without knowledge of the registrant's prior use and has been continuously used by
> such party or those in privity with him from a date prior to registration of the mark
> under this chapter or publication of the registered mark under subsection (c) of
> section 1062 of this title: Provided, however, That this defense or defect shall apply
> only for the area in which such continuous prior use is proved; or
>
> (6) That the mark whose use is charged as an infringement was registered and used
> prior to the registration under this chapter or publication under subsection (c) of
> section 1062 of this title of the registered mark of the registrant, and not abandoned:
> Provided, however, That this defense or defect shall apply only for the area in which
> the mark was used prior to such registration or such publication of the registrant's
> mark; or
>
> (7) That the mark has been or is being used to violate the antitrust laws of the United

States.

15 U. S. C. § 1115(b)(1)-(7).  Thus, although "registration is *conclusive* evidence of the registrant's

exclusive right to use the mark," that evidence may be challenged on the basis of any one of the

enumerated defenses set forth in  § 1115(b).   *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469

U.S. 189, 196 (1985)(emphasis in original).   The seven enumerated defenses are the only defenses

that can be asserted if the mark has become incontestable.  *Id.*

    Although Defendants' assertion that CPP has abandoned its mark is one of the enumerated

defenses, the claim that the registration application is void *ab initio* is not a listed defense.  Reported

decisions addressing a void *ab initio* claim usually involve circumstances in which the trademark

has not yet been registered, and a pending trademark application is challenged as void *ab initio.  See,*

*e.g., Avakoff v. Southern Pacific Company*, 765 F.2d 1097 (Fed. Cir. 1985);  *Gay Toys,* 585 F.2d at

1068.    In both  *Avakoff* and *Gay Toys*, a pending registration application was challenged as void

*ab initio* because the applicant had not used the mark in commerce prior to filing the application.

In each case, the Trademark Trial and Appeal Board ("TTAB") determined that the application was

void *ab initio* because there was no prior use; those holdings were affirmed on appeal.

    Void *ab initio* challenges have also been considered, however,  where the TTAB is asked

to cancel  an existing registered trademark .   *See Aycock*, 560 F. 3d at 1362.   In *Aycock,*  the

trademark had been registered for many years; however, the TTAB concluded in a subsequent

cancellation proceeding that the mark  had never been used in commerce either prior to or after the

issuance of the registration.  The TTAB determined the registration should be cancelled, and that

decision was affirmed on appeal.

    There are also circumstances in which  courts have considered void *ab initio* challenges to

registered trademarks which have reached incontestable status; in those cases, however, the challenging party argued that the application contained fraudulent misrepresentations, and fraud is one of the statutory defenses to incontestability under § 1115(b). *See, e.g., Martal Cosmetics, Ltd. v. International Beauty Exchange, Inc.*, 2007 WL 895697 (E. D. N. Y. Mar. 22, 2007) (unpublished decision).

In contrast to the foregoing decisions, the facts of this case establish that there was no challenge to CPP's registration application during its pendency or during the five-year period following the registration. Subsequently, CPP filed its 2004 declaration of continuous use, and the PTO accepted the same.

While cancellation could arguably be sought on the grounds that CPP fraudulently misrepresented the date of use or otherwise committed fraud in its trademark application, Defendants do not allege that it did so. Defendants offer no authority to support the contention that cancellation of the trademark as void *ab initio* may be asserted, after the mark has become uncontestable, for reasons other than the specific defenses enumerated in § 1115(b). Nor has the Court located such authority. Certainly, CPP's misstatement in the 1994 application regarding the date on which it first used the mark in commerce is a matter of concern to the Court, and the Court does not find persuasive Knight's argument that he misunderstood the meaning of "use in commerce."[6] The Court's concerns, however, involve questions of credibility which cannot properly

---

[6]*In fact, the evidence does not support his contention that he believed use of the mark on letterhead and other CPP materials was sufficient. While the name and address of CPP appears on many letters and documents in the record, the Court located no document on which the "Real Cars" mark or logo appeared prior to 1995; in fact, the record contains no letterhead containing the logo or trademark at any time. See Defendants' Exs. 5, 9, 10,12, 16, 18, 19, and 22 through 26. Nor does the letterhead on which Knight corresponded with the United States Patent and Trademark Office include the "Real Cars" mark. Defendants' Ex. 38. CPP offers no document or other exhibit which shows the use of the "Real Cars" mark on any correspondence or paperwork of any kind, either prior to, or after, the November 18, 1994 trademark application.*

be decided when ruling on a summary judgment motion.   *Reeves v . Sanderson Plumbing Prods, Inc.*, 530 U.S. 133, 135 (2000) (citations omitted) (a court may not weigh the evidence or assess credibility when considering a summary judgment motion).

Accordingly,  the Court cannot conclude that, as a matter of law, the registration must be cancelled as void *ab initio*.  To the extent Defendants seek judgment on that basis, their motion is DENIED.

b.  Abandonment of a mark:

Defendants next argue that, even if CPP had a valid trademark registration, it is no longer protectable because CPP has abandoned its use.   The fact that the mark has become "incontestable" pursuant to statute does not preclude Defendants from challenging it on this basis, as abandonment is one of the statutory defenses set forth in § 1115(b).

According to the Lanham Act, a registered trademark may be abandoned where the owner discontinues use with the intent not to resume the same or where the conduct of the owner causes the mark to become a generic name.   The Act provides that a mark shall be deemed to be "abandoned" if either of the following occurs:

> (1) When its use has been discontinued with intent not to resume such use. Intent not to resume may be inferred from circumstances. Nonuse for 3 consecutive years shall be prima facie evidence of abandonment. "Use" of a mark means the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark.
>
> (2) When any course of conduct of the owner, including acts of omission as well as commission, causes the mark to become the generic name for the goods or services on or in connection with which it is used or otherwise to lose its significance as a mark. Purchaser motivation shall not be a test for determining abandonment under this paragraph.

15 U. S. C. § 1127.   A party claiming that a mark has been abandoned must "show non-use of the

name by the legal owner and no intent by that person or entity to resume use in the reasonably foreseeable future." *Emergency One, Inc. V. American Fireagle, Ltd.*, 228 F. 3d 531, 535 (4th Cir. 2000).   Non-use for three consecutive years alone, however, constitutes *prima facie* evidence of abandonment.  *Id.* at 536; 15 U. S. C. § 1127(1).   Thus, proof of three consecutive years of non-use creates a presumption of abandonment. *Id.*; *Cerveceria Centroamericana, S.A., v. Cerveceria India. Inc.*, 892 F.2d 1021, 1025-26 (Fed.Cir.1989); *Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1044-45 (2nd Cir. 1980).   "Once the presumption is triggered, the legal owner of the mark has the burden of producing evidence of either actual use during the relevant period or intent to resume use." *Emergency One*, 228 F. 3d at 536; *Cerveceria Centroamericana*, 892 F.2d at 1026.   If a presumption of abandonment is established, the owner can rebut the presumption with evidence of "valid reasons for nonuse <u>or</u> by proving lack of intent to abandon." *Star-Kist Foods, Inc. v. P. J. Rhodes & Co.*, 769 F.2d 1393, 1396 (9th Cir.1985)(emphasis added).   Thus, evidence of use during the relevant period or evidence of intent to resume use in the reasonably foreseeable future are sufficient to defeat the presumption of nonuse.   *Emergency One*, 228 F. 3d at 536.

If there is no presumption of non-use, the party asserting abandonment must prove both that there is a period of non-use and that the owner has no intent to resume use in the reasonably foreseeable future.   *Chere Amie, Inc. v. Windstar Apparel Corp.*, 191 F. Supp. 2d 343, 349 (S. D. N. Y. 2001 (citing *Stetson v. Howard D. Wolf & Assocs.*, 955 F.2d 847, 850 (2nd Cir. 1992)).   In any event, the ultimate burden of proof remains with the party asserting abandonment. *Emergency One*, 228 F. 3d at 536 (citing *Rivard v. Linville*, 133 F. 3d 1446, 1449 (Fed. Cir. 1998) and *Cerveceria Centroamericana*, 892 F.2d at 1026).

Because abandonment  is "in the nature of a forfeiture," courts have consistently held that

the party asserting abandonment is required to "strictly prove" its claim.  *Electro Source, LLC v. Brandess-Kalt-Aetna Group, Inc.*, 458 F. 3d 931, 935 n. 2 (9th Cir. 2006);  *ITT Industries, Inc. v. Wastecorp, Inc.*, 87 F. App'x 287, 294 (3rd Cir. 2004) (unpublished) (citing *Saratoga Vichy Spring* 625 F.2d at 1044).  The courts are not in agreement regarding what is required to constitute "strict proof."   Some have held that a defendant must prove abandonment by clear and convincing evidence.  *See Emmpresa Cubana Del Tabaco v. Culbro Corp.*, 213 F. Supp. 2d 247, 268 (S. D. N. Y. 2002).  However, other courts have declined to expressly adopt that standard, although describing the defendant's burden as one of strict proof.  *See, e.g., Cumulus Media, Inc. v. Clear Channel Communications, Inc.,* 304 F. 3d 1167, 1175 (11th Cir. 2002); *Cerveceria Centroamericana,* 892 F.2d at 1024.  The Tenth Circuit has not decided this question.

Defendants argue that Plaintiff has not used the "Real Cars" trademark for more than three years, as evidenced by the fact that CPP did not pay sales tax after 2002, and CPP has no records of sales after that date.  CPP disputes this contention, arguing that there were sales of products displaying its trademark during that time period and that its failure to pay sales tax is not dispositive of the question.  CPP also relies on its May 10, 2004 declaration of continuous use, in which it represented to the  PTO that its  "Real Cars" mark had been continuously used in commerce during the preceding five consecutive years, and the PTO's acceptance of that declaration.   CPP Exs. 2A and 2B.

According to CPP, the continuous use of the mark in commerce is based on the fact that, in 1999,  Knight began selling CPP's products on Ebay, including sales of toy vehicles displaying the "Real Cars" mark,  and that he continues to do so.  CPP Ex. 2, ¶ 4.   Defendants argue that these sales do not constitute continuous use of the trademark by CPP because they were not conducted in

its name but on Knight's web site using the identifier "mymom65" instead of CPP.[7]

In the context of the Lanham Act, "use" means the "bona fide use of a mark in the ordinary course of trade." 15 U. S. C. § 1127. "[N]either promotional use of the mark on goods in a different course of trade nor mere token use constitute 'use' under the Lanham Act." *Emergency One*, 228 F. 3d at 536 (citing *Imperial Tobacco, Ltd. v. Philip Morris, Inc.*, 899 F.2d 1575, 1582-83 ( Fed. Cir. 1990) and *Exxon Corp. v. Humble Exploration Co.*, 695 F.2d 96, 99-102 (5th Cir. 1983)).

In this case, the parties have not submitted authority directly addressing whether sales on eBay constitute the "ordinary course of trade" or the impact of eBay sales on a claim of abandonment. Nor has the Court located direct authority. However, one court has indicated that evidence of attempts to sell, including attempted sales "through the internet" may be sufficient to create a factual dispute regarding a claim of abandonment. *International Stamp Art, Inc. v. U. S. Postal Service*, 2005 WL 3947951, at *6 (N. D. Ga. May 27, 2005). Moreover, the court noted that actual sales "are not the only way in which a mark may be 'used.'" *Id.* (quoting *Cumulus Media, Inc. v. Clear Channel Communications, Inc.*, 304 F. 3d 1167, 1175 n. 10 (11th Cir. 2002)). "A plaintiff does not abandon a mark just because it has not succeeded in selling the product featuring the trademark." *International Stamp Art*, 2005 WL 3947951, at *6.

Even if the Court concludes that CPP did not use its mark during the relevant period, however, there remains the issue of whether CPP intends to resume the use of its mark in the reasonably foreseeable future. *Cumulus Media*, 304 F. 3d at 1173-74; *Emergency One*, 228 F. 3d at 537. Although intent is a question of fact which cannot readily be determined in a motion for

---

[7]*Defendants also contend that, after this lawsuit was filed, Knight altered his internet sales advertisements to include CPP's name and the "Real Cars" logo. To the extent that Defendants suggest this undermines Knight's credibility, the Court cannot properly assess that argument in a summary judgment motion. <u>Reeves</u>, 530 U.S. at 135.*

summary judgment, intent to abandon in a trademark case can be "established inferentially from the same facts that establish non-use." *Cumulus Media*, 304 F. 3d  at 1174 (citing 15 U. S. C. § 1127 and *Vitaline Corp. v. Gen. Mills, Inc.*, 891 F.2d 273, 275 (Fed. Cir. 1989)).  The owner of a trademark cannot defeat an abandonment claim by "simply asserting a vague, subjective intent to resume use of a mark at some unspecified future date," but must produce evidence "of intent to resume use 'within the reasonably foreseeable future.'" *Emergency One*, 228 F. 3d at 537 (quoting *Silverman v. CBS, Inc.*, 870 F.2d 40, 46-47 (2nd Cir. 1989)).  What constitutes the reasonably foreseeable future "will vary depending on the industry and the particular circumstances of the case." *Id.*

In this case, the Court concludes that material fact disputes preclude summary judgment on this issue.   Even if Defendants succeed in showing non-use for a period of three years, CPP has submitted evidence suggesting that it sought to engage in sales during that period and, in fact, sold products displaying the "Real Cars" mark on eBay.   The Court does not find CPP's evidence in this regard substantial; however, it is sufficient to constitute more than a scintilla of evidence, thereby precluding summary judgment.  Furthermore, Knight's affidavit indicates CPP's continuing use of its mark and indicates its intent to continue the use of its trademark. While this evidence cannot be considered substantial, it also constitutes more than the scintilla required to overcome summary judgment.  Given the heightened burden requiring Defendants to establish abandonment by strict proof,  the Court concludes that summary judgment cannot be granted on the contention that CPP has abandoned its trademark.  To the extent Defendants seek judgment on this basis, their motion is DENIED.

3.  Likelihood of confusion:

The Court must next consider whether CPP has submitted sufficient evidence to create a material factual dispute regarding the likelihood of confusion between its trademark and that of Defendants. The following factors are considered in determining whether there is a likelihood of confusion between two marks:

> (1) the degree of similarity between the marks; (2) the intent of the alleged infringer in adopting its mark; (3) evidence of actual confusion; (4) similarity of products and manner of marketing; (5) the degree of care likely to be exercised by purchasers; and (6) the strength or weakness of the marks.

*Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F. 3d 964, 972 (10th Cir.2002)(citing *King of the Mountain Sports*, 185 F. 3d at 1089-90). "These factors are interrelated and no one factor is dispositive." *Sally Beauty Co.*, 304 F. 3d at 972.

As a general rule, summary judgment is disfavored in trademark infringement cases because likelihood of confusion is a question of fact which is normally inappropriate for summary disposition. *King of the Mount Sports*, 185 F. 3d at 1089. However, summary judgment may be granted in appropriate cases, as "[c]ourts retain an important authority to monitor the outer limits of substantial similarity within which a jury is permitted to make the factual determination whether there is a likelihood of confusion." *Id.* at 1090. Thus, summary judgment may be granted if the evidence shows that no reasonable jury could find infringement. *Id.; see also Universal Money Centers, Inc. v. Am. Tel. & Tel. Co.,* 22 F. 3d 1527, 1529 (10th Cir. 1994). If the nonmovant demonstrates a genuine issue of material fact regarding the likelihood of confusion, of course, summary judgment is not appropriate. *Sally Beauty Co.*, 304 F. 3d at 972.

The record presented to the Court reflects that there is similarity in the two marks at issue because both include a chevron design and the word, "cars." That similarity extends to the fact that both parties place their marks on miniature toy vehicles. However, the record reflects that

Defendants' mark appears on a significantly broader range of products than that of CPP, as its mark has appeared only on two, limited edition products.  Furthermore, Defendants' mark is displayed on products depicting animated cars which are not represented as replicas of actual cars driven by known drivers. In addition, the marketing of the products differs significantly.   Defendants' products are widely advertised and distributed to a very broad market of potential buyers, while CPP's limited edition toy vehicles are primarily aimed at collectors of miniature die-cast toys.   As CPP points out, however, there is evidence that defendant Mattel distributed both parties' products in its retail outlets.

With respect to the issue of Defendants' intent to infringe, Defendants have submitted evidence reflecting an extensive search which did not reveal the existence of CPP's prior mark.  CPP argues, however, that a more detailed search would have revealed the existence of its registered mark, and it criticizes the scope of the search conducted by Defendants.  There is no direct evidence that Defendants acted in bad faith, and  no direct evidence of Defendants' prior knowledge of CPP's mark; the evidence shows that Defendants conducted searches to determine if a prior trademark existed, and no mark was found.  CPP challenges the sufficiency of Defendants' search.  While the Court does not find CPP's evidence in this regard significant, there appears to be sufficient evidence to create a material fact dispute as to this issue.   Moreover, it is apparent that Mattel, which had licensing agreements with both CPP and Disney, was aware of CPP's products because it had manufactured them in 1995 and  1996.

Defendants argue extensively that CPP's failure to submit surveys establishing consumer confusion is fatal to CPP's claim.  As CPP points out, however, the absence of surveys does not mandate a finding of no likelihood of confusion.  *Sally Beauty Co.*, 304 F. 3d at 974.

As CPP also argues, application of the likelihood of confusion factors differs somewhat in a reverse confusion case.  Reverse confusion typically arises where a large national company contemplating a trademark for its national products discovers that there is an existing similar mark owned by a small company, generally using its mark in a specific region; the smaller company is the "senior user" of its mark, and the large company obtaining a similar mark is the "junior user." In such cases, the national "junior user" cannot use its superior economic power to saturate the market with a mark confusingly similar to that of the small company.  *See* 4 J. Thomas McCarthy, Trademarks and Unfair Competition § 23:10 (2007); *Big O Tire Dealers v. Goodyear Tire & Rubber Co.*, 561 F.2d 1365 (10th Cir. 1977).

Defendants do not dispute that CPP is the senior user constituting a small company, while Defendants, as junior users, are large national companies having superior economic power. However, Defendants contend that CPP cannot prevail on a reverse confusion claim because  the undisputed facts show that Disney obtained its 2006  registered trademark without knowledge of CPP's trademark.  As Defendants contend,  the evidence shows that they conducted a trademark search which did not disclose CPP's mark.  In response, CPP argues that the search conducted was not sufficiently thorough and that an adequate search would have revealed the existence of its trademark.  Defendants respond that they employed counsel having expertise in trademark searches, that the methods utilized in the searches were consistent with the standard practice in the industry.  CPP argues that, even if Defendants' lack of  knowledge is shown, whether they acted in good faith is only one factor to be considered in a reverse confusion claim.

The Court concludes that, although its arguments are not supported by substantial evidence, CPP has presented more than a scintilla of evidence so as to survive summary judgment.

Furthermore, as CPP argues, when considering the "likelihood of confusion" factor assessing the relative strength of the parties' marks in a reverse confusion case, the strength of the junior user's mark is significant, as it is the larger company typically having a wider market. Thus, the relevant inquiry is whether the junior user's mark has sufficient commercial strength to overwhelm the senior user's mark, thus creating consumer confusion regarding the origin of the mark. *See Altira Group, LLC v. Phillip Morris Companies, Inc.*, 207 F. Supp 2d 1193, 1203 (D. Colo. 2002).

The Court cannot conclude, on the basis of the evidence before it, that a reasonable jury could not find a likelihood of confusion between the parties' two marks. Although CPP's evidence is not substantial, it is sufficient to avoid summary judgment. Accordingly, Defendants' motion is DENIED as to CPP's § 32 claim.

B. The unfair competition claim under § 43(a):

CPP also asserts a cause of action based on unfair competition, false designation or origin and infringement of an unregistered mark under § 43(a). CPP contends that, even in the absence of a registered federal trademark, it is entitled to recover under § 43(a).

Pursuant to § 43(a), infringement of an unregistered mark is triggered by a use which is "likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association" of the junior user with the senior user. 15 U. S. C. § 1125(a). Thus, a plaintiff whose trademark has not yet been registered may have a cause of action pursuant to § 43(a). To prove its claim under § 43(a), CPP must show both that its mark is protectable and that Defendants' use of an identical or similar mark is likely to cause confusion among consumers. *Donchez v. Coors Brewing Co.*, 392 F. 3d 1211, 1215 (10th Cir. 2004).

To establish a protectable interest in the mark, Plaintiff must prove that it has actually used

the trademark in commerce and that such use is more than "small, sporadic or inconsequential." *Mars Musical Adventures, Inc. v. Mars, Inc.*, 159 F. Supp. 2d 1146, 1148 ( D. Minn. 2001) (citing *Sweetarts v. Sunline, Inc.*, 380 F.2d 923, 928 (8th Cir. 1967)). With respect to the likelihood of confusion factor, the analysis is the same as that applied to a § 32 infringement claim.

The Court has concluded that whether CPP can establish the requisite element of a likelihood of confusion between the parties' marks presents a question of material fact on which summary judgment cannot be granted. Accordingly, to the extent Defendants seek judgment on the § 43(a) infringement claim, their motion must be denied.

III. Conclusion:

For the foregoing reasons, Defendants' Motion for Summary Judgment [Doc. No. 52] is DENIED. The case will proceed accordingly.

IT IS SO ORDERED this  2nd____ day of June, 2009.

TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE